**A. D. McCULLOUGH, Receiver for Horse Auctions, Inc., Plaintiff,**

v.

**WALKER LIVESTOCK, INC., and Buddie Walker, Individually, Defendants.**

**Civ. A. No. 1688.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

July 29, 1963.

Franklin Wilder, Ft. Smith, Ark., for plaintiff.

Shaw, Jones & Shaw, Ft. Smith, Ark., Carl J. Schmolder, Dallas, Tex., for movants.

Hardin, Barton & Hardin, Ft. Smith, Ark., for defendants.

JOHN E. MILLER, District Judge.

On December 3, 1962, Horse Auctions, Inc., a corporation organized and existing under and by virtue of the laws of the State of Texas and qualified to do business in the State of Oklahoma, filed its complaint against defendants, Walker Livestock, Inc., a corporation organized and existing under and by virtue of the laws of the State of Arkansas and qualified to do business in Oklahoma, and Buddie Walker, a citizen and resident of Arkansas.

The defendant Walker Livestock, Inc., was formerly the Fort Smith Horse Auction Company, with its corporate name being changed to Walker Livestock, Inc.

The amount in controversy exceeds the sum of $10,000, exclusive of interest and costs.

In its complaint the plaintiff alleged that on or about October 15, 1962, the plaintiff bought from Walker Livestock, Inc., for a cash consideration of $30,000 paid and $20,000 to be paid, certain physical assets, including "All stock of the American Appaloosa Association, Inc.," which stock Walker Livestock, Inc., had failed and refused to deliver and assign to plaintiff. That as a further consideration, the defendant Buddie Walker, Individually, agreed to give to plaintiff his "advice, consultation, time and service to the advancement and betterment" of the plaintiff's business and was employed by plaintiff for an indefinite period of time; that although the services of the defendant Buddie Walker were deemed to be very valuable to plaintiff, the defendant Buddie Walker continually and systematically worked, schemed and connived to detract, undermine, wreck and damage plaintiff's business by publicly stating "that plaintiff would be out of business within 90 days." That the said Buddie Walker contacted customers and prospective customers of plaintiff and attempted to have them refrain and desist from doing business with plaintiff, and further refused and neglected to assign a lease or contract pertaining to Texas Horse Auction Company, and further advocated, advised, fostered, and promoted present and future litigation against the plaintiff.

That by virtue of the defendants' acts and actions, separately and concurrently, and the fact that defendant Buddie Walker, as majority and controlling stockholder in defendant Walker Livestock, Inc., pursued the course of conduct as herein alleged, the plaintiff is entitled to rescind said contract and other instruments and have returned to it the sum of $30,000 and such other sums as it has paid out in performing the contract, and in lieu thereof damages in the sum of $65,000.

The prayer was for judgment for $30,000 and for damages in the sum of $65,000.

The complaint was signed, "HORSE AUCTIONS, INCORPORATED, by Van K. Davis, Exec. V.P. & Sec., and Carl J. Schmolder, Attorney at Law, 505 Texas Bank Building, Dallas 2, Texas."

Service of summons was had on the defendants at 7:30 p. m. on December 3, 1962.

On December 21, 1962, the court granted the defendants until January 4, 1963, "within which to answer or otherwise plead to the complaint of the plaintiff * * *." On January 3, 1963, the day before the expiration of time for the defendants to answer or otherwise plead to the complaint, the present plaintiff, A. D. McCullough filed a petition for substitution of parties, in which he alleged, "that on the 27th day of December, 1962, the District Court of Sequoyah County, Okla-

homa, appointed him Receiver for Horse Auctions, Incorporated, and that he should now be substituted as the party plaintiff in the captioned matter in accordance with Rule 25(c), Federal Rules of Civil Procedure."

The motion to substitute the Receiver as party plaintiff was represented to the court as being of extreme urgency in that the monthly sale of horses, which constituted the only source of income to the corporation (Horse Auctions, Inc.), had been scheduled and advertised for January 4 and 5, 1963.

Rule 25(c), Fed.R.Civ.P., provides:

"In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule."

Subdivision (a) (1) of the rule provides:

" * * * The motion for substitution may be made by the successors or representatives of the deceased party or by any party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 * * *."

Rule 6(d) provides:

"A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court."

Thus, upon the plea that a real emergency existed, the order of substitution was entered the same day that the motion therefor was filed. Immediately following the entry of the order of substitution, another motion was filed by the substituted plaintiff, A. D. McCullough, Receiver for Horse Auctions, Inc., in which he was joined by the defendants Walker

Livestock, Inc., and Buddie Walker, individually, in which they alleged that on December 31, 1962, "they entered into a stipulation of settlement, a copy of which is attached hereto as Exhibit A, and by this reference incorporated herein, and that on the 31st day of December, 1962, this stipulation was approved by order of the District Court of Sequoyah County, Oklahoma, a certified copy of said order being attached hereto as Exhibit B, and by this reference incorporated herein.

"WHEREFORE, the parties move the court to enter an order dismissing the captioned case with prejudice in accordance with the stipulation and the order of the District Court of Sequoyah County, Oklahoma."

The above motion was signed by Franklin Wilder, Attorney for A. D. McCullough, Receiver, and Messrs. Hardin, Barton & Hardin, Attorneys for Walker Livestock, Inc., and Buddie Walker, Individually.

The day following the commencement of the suit in this court by Horse Auctions, Inc., one Irvin W. Shelman, a minority stockholder of the corporation, caused to be filed in the District Court of Sequoyah County, Oklahoma, a complaint against the corporation, Horse Auctions, Inc., in which he alleged that the corporation was doing business at Moffett, Oklahoma, where the sales barns are located, immediately across the Arkansas River from Fort Smith, Arkansas. The prayer of the complaint was that the defendant corporation be cited to appear and answer the complaint; that notice directing the corporation to appear be served upon Van K. Davis at Moffett, Oklahoma, at a time to be designated in the order for the corporation to show cause, if any it has, "why a receiver should not be appointed forthwith to take charge of all of the assets and business of defendant corporation; that the court fix such bond as it may see fit; and that upon the receiver executing such bond that all costs in connection therewith be assessed against defendant corporation; that a reasonable fee be

"fixed in accordance with law to compensate the receiver to be appointed for his services herein; and for such other and further relief, general and special, in law or in equity, to which plaintiff may show himself to be justly entitled."

It does not seem necessary to set forth the allegations contained in the complaint. Suffice it to say that the allegations are ample to require the appointment of a receiver for Horse Auctions, Inc., if substantiated by testimony.

A hearing was held on December 10, 1962, in the District Court of Sequoyah County, and on December 27, 1962, the court entered an order appointing A. D. McCullough as Receiver for Horse Auctions, Inc. Inter alia, the court incorporated in the judgment a finding that Horse Auctions, Inc., "has property and assets in Sequoyah County, Oklahoma, and that the plaintiff is a stockholder in said corporation * * *."

The court further found that:

" * * * the properties, funds and assets of the said corporation is [sic] in danger of being lost, removed and materially injured and further that the said corporation if not insolvent is in eminent [sic] danger of becoming insolvent in that the Auction Sale owned by the corporation in Erving, Texas, has been operated [sic] from the corporation and is being carried on by John W. Lyles, one of the original purchasers, and the principal stockholder in the corporation as his personal properties;

" * * * that the sale at St. Louis, Missouri has been discontinued by the management of the corporation to the detriment and loss of the corporation;

" * * * that the said defendant corporation is not being managed for the best interests of all the stockholders thereof."

The Receiver was directed to execute and file a bond in the sum of $35,000.

Attached to the motion to dismiss as Exhibit A was a copy of the stipulation entered into between the Receiver and the defendants, and as Exhibit B was an order of the District Court of Sequoyah County, Oklahoma, approving the stipulation. It does not seem necessary to set out in detail the stipulation other than to say that the parties for and in considerations therein expressed agreed that the suit commenced in this court on December 3, 1962, by Horse Auctions, Inc., should be dismissed with prejudice.

The order of the District Court of Sequoyah County approving the stipulation was entered on December 31, 1962.

When this motion to dismiss was presented to the court, together with the documents referred to, the court on the same date, January 3, 1963, entered an order in accordance with the stipulation dismissing the complaint of the plaintiff, Horse Auctions, Inc., with prejudice, and a copy of said order of dismissal was mailed to the Texas attorney for the plaintiff, Horse Auctions, Inc., and also to Messrs. Shaw, Jones and Shaw, local attorneys associated with the Texas attorney.

On March 13, 1963, two months and 10 days after the order of dismissal was filed, John H. Liles and Van K. Davis, majority stockholders of plaintiff corporation, through their attorneys, Mr. Schmolder of Dallas, Texas, and Messrs. Shaw, Jones and Shaw of Fort Smith, filed their motion "to set aside and vacate its orders of January 3, 1963, dismissing the complaint with prejudice and ordering disbursement of the funds placed in the Registry of the Court, reinstate said cause and order said funds replaced in the Registry of the Court by the defendants and (for) all other proper relief."

On April 9, 1963, a hearing was held on the motion at which time the only evidence introduced was (1) complaint filed in the District Court of Sequoyah County for the appointment of a Receiver; (2) order appointing a Receiver; (3) petition of A. D. McCullough, Receiver, filed in the District Court of Sequoyah County for authority to settle and compromise "Civil Case No. 1688, styled Horse Auctions, Inc. vs. Walker Livestock, Inc. and Buddie Walker, defendants in the United States

District Court, Western District of Arkansas, Fort Smith Division, in accordance with the terms and conditions set out in the stipulation attached hereto and to thereupon dismiss such suit with prejudice to the refiling of same"; (4) an order approving Receiver's petition for authority to compromise, settle and dismiss the instant action, Civil No. 1688; and (5) the stipulation upon which the District Court of Sequoyah County acted in authorizing the Receiver to take such action.

The case was argued orally on the date of the hearing and was taken under submission with the request that counsel submit written briefs in support of their contentions. The attorneys for the movant, Horse Auctions, Inc., were unable to submit their brief until July 5, 1963. The answer brief of the Receiver, A. D. McCullough, was submitted July 18, 1963, and on July 20, 1963, the attorneys for John H. Liles and Van K. Davis, movants herein, advised the court that they did not desire to file a reply brief, and suggested that the controversy was ready for decision. In addition to the documentary evidence that was introduced at the hearing, the court has considered the record in the instant case, together with the oral arguments and briefs of counsel.

The orders of the court which the movants, Liles and Davis, seek to have set aside and held for naught were entered by the court without notice to the movants or their attorneys. The motion is based upon the provisions of Rule 60(b), Fed.R.Civ.P., which provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; * * * (6) any other reason justifying relief from the operation of the judgment. * * *"

In 7 Moore's Federal Practice, 2nd Ed., beginning at page 253, the learned author states:

"Because Rule 60(b) is remedial and to be construed liberally, and because of the comprehensive sweep of 60(b) (3) any fraud, misrepresentation, circumvention, or other wrongful act of a party in obtaining a judgment so that it is inequitable for him to retain the benefit thereof, constitute grounds for relief within the intendment of 60(b) (3)."

The movants contend that because of certain disagreements which the minority stockholder, Irvin W. Shelman, had with the majority stockholders, the movants, that he caused to be filed the receivership suit in the District Court of Sequoyah County, Oklahoma; that the defendant Buddie Walker seized upon the opportunity presented him by the disagreement between the stockholders and actively aided, abetted and promoted the receivership action which resulted in the appointment of the receiver; that immediately following the appointment, the Receiver entered into the stipulation heretofore referred to with Buddie Walker; that the order of the District Court of Sequoyah County, Oklahoma, approving the stipulation was obtained without notice to Liles and Davis or their attorneys; and was then presented to this court by the Receiver and the defendants, all without the knowledge of or notice to the majority stockholders or their attorneys; that this clandestine scheme and agreement constituted a fraud upon the majority stockholders, the movants Liles and Davis, who are in fact the real parties in interest in this action and constituted a fraud upon this court; that if this court had been apprised of the true facts that the said Liles and Davis were the real parties in interest and had not consented to, or even been notified of the terms of the proposed stipulation or agreement, the court would not have entered the order dismissing the complaint with prejudice.

As heretofore stated, the orders of this court sought to be set aside by the mov-

ants were entered without notice to the movants Liles and Davis, and were entered because the court was impressed by the apparent, if not real, emergency that existed at that time because it was necessary for the benefit of the corporation, Horse Auctions, Inc., that the sale of horses set for the next two days, January 4 and 5, proceed, and it was apparent that the sale would not proceed unless some immediate financial assistance was obtained by the corporation. Also, the receivership suit was tried to the District Court of Sequoyah County after due notice to the corporation, and while the record proper is silent, yet counsel for the Receiver and the defendants Walker Livestock, Inc., and Buddie Walker, in their brief state:

"On January 4 and 5, 1963, the horse sale was held as advertised and defendants furnished the required finances in accordance with the stipulation of dismissal. Days passed and then weeks, and the movants took no action whatsoever to have this so-called 'fraud' corrected. Finally, after all the steps required by the stipulation of dismissal had been accomplished by the parties, the movants come into court and ask the court to set aside the order of dismissal."

In the reply to the motion of movants the Receiver on March 20, 1963, stated:

"I.

"That said persons making said motion are not parties to this suit, and therefore have no right to intervene or make any motion without a previous Order of this Court allowing same. That the said motion should be dismissed on this ground.

"II.

"That the Horse Auctions, Inc., is no longer a party to this suit, under the Court Order dated January 3rd, 1963, in this case, substituting A. D. McCullough, Receiver for said corporation, and therefore said motion should be dismissed on this ground.

\*    \*    \*    \*    \*    \*

"IV.

"That the record in this case speaks for itself. This Receiver acting under a Court Order in the Court in which he was appointed, to-wit, the District Court of Sequoyah County, Oklahoma, did dismiss the complaint in this suit based upon a settlement entered into on the basis of valuable consideration paid by said defendants, as set out in the Stipulation entered into by said parties and previously filed with this Court. That a copy of the original Court Order instructing this Receiver to act has already been filed in this case.

"Further, that the District Court of Oklahoma heard testimony in regard to the internal affairs of Horse Auctions, Inc., for a period of three or four days, and was very familiar with the affairs of said company when the District Judge ordered this Receiver to make this settlement described above. That the respondent denies that there is any fraud or collusion on his part or the District Judge's part in this case. That said respondent knows of no fraud or collusion on the part of anyone. However, it has been reported to this respondent that Mr. Van K. Davis, one of the petitioners herein, did tell the Oklahoma District Judge that there was a substantial amount of money in the bank account of Horse Auctions, Inc., when as a matter of fact, said bank account was overdrawn and many checks that had been issued were not even noted on the books.

"Respondent further states that said settlement and dismissal in this case was in his sincere opinion for the best interest of Horse Auctions, Inc., as well as the creditors of same."

The court which appointed the Receiver later approved the stipulation and directed the Receiver to dismiss the instant action. No appeal was taken by anyone from the order appointing the Receiver nor has any action been taken by the movants to set aside or annul the order

appointing the Receiver. The order appointing the Receiver was entered only after what appears to have been a full and complete hearing. The assets of the corporation were located within the jurisdiction of the court. The court had jurisdiction of the corporation by service of notice and order upon Van K. Davis, the Executive Vice President, who had signed the complaint that was filed and was pending in this court.

Rule 60(b), Fed.R.Civ.P., provides that the motion to set aside a judgment "shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." The movants are not contending that the judgment of dismissal should be set aside for reasons (1) and (2), but are relying upon reasons (3) and (6).

In 7 Moore's Federal Practice, 2nd Ed., Sec. 60.23[2], beginning at page 319, the learned author states:

"If a motion for relief under clause (1), or (2), or (3) is not made within a reasonable time it will be denied, although made within the one year period. While the 'reasonable time' limitation may cut down the one year period, it cannot, however, enlarge that period, for a motion for relief under clause (1) or (2) or (3) is subject to a maximum one year period, computed generally from the entry of the final judgment, and, in general, that time is not enlarged by the taking of an appeal."

At page 325 it is stated:

" * * * Clause (6) is reserved for exceptional cases; and if the ground for relief is properly within that clause then what constitutes a reasonable time must, of necessity, vary with the peculiar facts of the case.

"If the power of the court to grant relief is not barred by a fixed time period, such as the one year period applicable to clauses (1)–(3), the grant or denial of the motion normally rests in the exercise of a sound discretion by the district court applied in light of all attendant circumstances and relevant factors, including the factor of reasonable time."

■ The claim under clause (3), "fraud * * *, misrepresentation, or other misconduct of an adverse party," has not been substantiated by the testimony of any witness. The court cannot and will not presume that the Receiver and the defendants entered into a fraudulent scheme to defraud the movants. Thus, the movants are relegated to their claim under clause (6), "any other reason justifying relief from the operation of the judgment." The claim based on that clause is not barred by a fixed period of time, and whether the motion should be granted under clause (6) is a question that must be determined by the court by consideration of all attendant circumstances and relevant factors which, of course, would include the factor of reasonable time.

■ It is true that the movants did not receive notice of the filing of the motion by the Receiver to be substituted as the party plaintiff, nor did movants receive notice of the filing of the motion, based upon the stipulation, for dismissal of the instant suit, but they did receive notice of the entry of the orders by this court not later than January 4, 1963. Instead of taking action within a reasonable period of time, they waited two months and ten days before filing the motion now before the court. During that 70 days at least one sale had been made on January 4 and 5, 1963. The Receiver had taken charge of the assets of the corporation. After a full hearing the Oklahoma court had found ample grounds to justify and, in fact, to require the appointment of a Receiver. All of those facts were in the possession of the movants, and if they believed that the Receiver was appointed without justification, they should have taken action in the Oklahoma court to have the order appointing the Receiver set aside instead of coming into this court with a motion in which they alleged fraud and connivance on the part of the Receiver and the defendants. Under the undisputed facts and all cir-

cumstances and relevant factors, the court is of the definite opinion that the movants did not act within a reasonable time, and for that reason alone their motion should be denied.

■ The movants also complain that they were the real parties in interest in the suit that was dismissed. However, one of the movants, Van K. Davis, deliberately commenced the action in the name of Horse Auctions, Inc., and signed the complaint himself as "Exec. V.P. & Sec." In the complaint it was alleged that the contract upon which the suit was based was entered into by the corporation, Horse Auctions, Inc., with the defendants Walker Livestock, Inc., and Buddie Walker. Certainly the corporation was a necessary, if not, indispensable party to assert the claim of the corporation against the defendants. It is immaterial that there may have been some disagreement between the movants as majority stockholders and the minority stockholder, Shelman. Whatever the disagreement was, the movants, as the men in charge of the corporation, chose to disregard such disagreement and to proceed in the corporate name against the defendants. Thus, the court is of the opinion that the corporation, Horse Auctions, Inc., was an indispensable party and the movants were not the real parties nor were they necessary parties.

The movants further contend in their brief that:

" * * * an order in personam, of a court of another state, ordering a party to do or refrain from doing an act is not entitled to full faith and credit in a sister state or a federal district court in a diversity case. Here the in personam order of the District Court of Sequoyah County, Oklahoma, would in no way be binding or entitled to full faith and credit in this court.

"In order for a court to exercise its jurisdiction, it must have 'power' over the 'person' or the 'res' to which it purports to exercise jurisdiction. The District Court of Se-

quoyah County, Oklahoma, had in personam jurisdiction over the Receiver, A. D. McCullough, and could order or give permission to said Receiver concerning the affairs of the corporation. The Oklahoma Court has no power to exercise jurisdiction over an action pending in this court, therefore, an order directed to a corporate receiver to dismiss an action pending in a Federal District Court in another state would not be binding upon the said Federal District Court."

Article IV, Section 1, of the Constitution of the United States provides:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof."

Title 28 U.S.C. § 1738, provides that the records and judicial proceedings of any court of any such state, or copies thereof, shall be proved or admitted in other courts within the United States by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form. Such records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States as they have by law or usage in the courts of such state from which they are taken.

Attached to the motion of the Receiver and the defendants to dismiss the case with prejudice was a copy of the stipulation which the Receiver and the defendants had entered into setting forth the terms of the proposed compromise and settlement marked Exhibit A to the motion, and introduced as evidence as the court's Exhibit 5. Also attached to the motion and marked as Exhibit B was the order of the Oklahoma court approving the stipulation, which order was introduced at the trial as the court's Exhibit

No. 4. The copy of the order of the Oklahoma court approving the stipulation of settlement was signed by the District Judge, Honorable E. G. Carroll, and certified to by the Court Clerk for Sequoyah County, Oklahoma. In the Clerk's certificate he states "that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in the Court Clerk's Office of Sequoyah County, Oklahoma, this 3 day of Jan. 1963." It will be noted that there was no certificate of the Judge of the Oklahoma court, but in lieu of a formal certificate, he signed the copy certified to by the Clerk of the Court.

No objection was made by movants that the copy of the judgment attached to the motion was not a full and complete copy of the judgment which was actually made and entered by the court, and this court is of the opinion that the proof is sufficient to establish that the judgment as set forth is a true copy of the records of the court. The only objection that the movants made to the judgment of the Oklahoma court approving the stipulation of settlement, and directing the Receiver to proceed to compromise the instant suit then pending in this court, is that the Oklahoma court had no power to direct and authorize the Receiver to present a motion to this court to dismiss the suit. The movants admit that the Oklahoma court had jurisdiction of the person of the Receiver, and that the res, the assets of Horse Auctions, Inc., were situated in Sequoyah County within the jurisdiction of the court, and that the court "could order or give permission to the said Receiver concerning the affairs of the corporation." It is difficult to understand, since the assets of the corporation were within the jurisdiction of the court and since the Receiver was an officer of the court and had been directed to take charge of the property of the corporation, why the court appointing the Receiver could not direct that he take such steps as appeared to be necessary to reduce the assets to his, the Receiver's, possession.

The learned attorneys for the movants quote from 50 C.J.S. Judgments § 868, as follows. "[O]rdinarily, an action cannot be maintained on a valid foreign judgment that the defendant do or refrain from doing an act * * *," in an effort to support their contention that an order in personam in the court of another state ordering a party to do or refrain from doing an act is not entitled to full faith and credit in a sister state, or a federal district court in a diversity case. It is the opinion of the court in view of the facts that the contention of the movants is entirely without merit. The Oklahoma court did not order anyone in Arkansas to do any act, but merely ordered its own officer, the Receiver, to proceed to carry out the judgment of that court entered at the time the court appointed him as Receiver to take actual possession of the assets of the corporation. The action taken by the Receiver in filing the moton requesting that the suit pending in this court be dismissed was only a procedure adopted by him in an effort to discharge his duties as the Receiver.

In 30A Am.Jur., Judgments, Sec. 237, page 304, the rule is stated as follows:

"A valid judgment of a sister state is entitled to full faith and credit under the Federal Constitution and statutes. Thus, the general rule is that a judgment rendered by a court of one state, authenticated as by law provided, is, under the full faith and credit clause of the United States Constitution, entitled, in the courts of another state of the Union, to force, effect, and full faith and credit, such as it has by law or usage in the courts of the state where the adjudication was had.

"The faith and credit to be given to a judgment of a sister state under the constitutional provision is not to be niggardly, but generous and full. The constitutional requirement of full faith and credit requires the judgment of a sister state to be given full, not partial, credit in the state of the forum. The full faith and credit

to which a judgment is entitled is the credit which it has in the state in which it was taken, not the credit that under other circumstances and conditions it might have had. However, the full faith and credit clause does not give foreign judgments all the legal properties, rights, and attributes to which they are entitled by the laws of the state where rendered. It is clear that no greater effect need be given to any judgment of a court of one state than is given to it in the state where rendered, and the full faith and credit clause does not require the courts of a state to give effect to every judgment of a foreign state, particularly in matters involving local sovereignty and title to real estate.

"The requirement of full faith and credit is to be read and interpreted in the light of well-established principles of justice, protected by other constitutional provisions which it was never intended to modify or override. Under this rule, it has been held that no state may obtain, in the tribunals of another jurisdiction, full faith and credit for a judgment which is based upon an unconstitutional law, or is rendered in a proceeding wanting in due process of law enjoined by the fundamental law."

In Section 239, supra, it is stated:

"The full faith and credit clause has established throughout the federal system the common-law principle that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered. A judgment of a sister state is conclusive as to the nature and amount of the claim upon which it was based. Thus, under the full faith and credit clause of the Constitution of the United States, a judgment rendered by a court of one state is, in the courts of another state of the Union, binding and conclusive as to the merits adjudicated.

It is improper to permit an alteration, modification, or reexamination of the judgment, or of the grounds on which it is based, or of the merits of the original cause of action. Thus, jurisdiction to render the judgment having been established or being presumed, the full faith and credit clause precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles upon which the judgment is based. Whatever mistake of law may underlie a judgment, it is, under the full faith and credit clause, conclusive as to all the media concludendi. The general rule is that if the judgment has locally the faith and credit of evidence of the highest nature, that is to say conclusive evidence, it must have the same faith and credit in every other court, and in this respect it has been declared that where a defendant has had full notice, the judgment is presumed to be conclusive in the state of its rendition. However, if a judgment is not conclusive in the state of its rendition, it is equally inconclusive in another state.

"A valid judgment rendered in one state will be recognized in another state as imposing upon the party against whom it was rendered a duty to obey the judgment, or as determining interest in a thing or in the status of the parties. However, no execution can issue directly upon a foreign judgment, but such judgment must be sued upon like any other debt. A foreign judgment cannot of its own force create any lien upon property in a state other than that of its rendition."

As to a stockholder's right to file a petition or complaint for the appointment of a receiver for the corporation, it is stated in 45 Am.Jur. Receivers, Sec. 14, at page 22, as follows:

"The qualification to call into action the power of a court of equity to appoint a receiver in a proper case

generally exists in a stockholder in a corporation, but, as a rule, recourse must be made to the directors of the corporation and prove fruitless before a stockholder is entitled to such relief."

In Sec. 109, page 92, supra, it is stated:

"The order or decree of the court embodies its determination and disposition with respect to the relief sought on an application or petition for the appointment of a receiver. Such a decree or order appointing a receiver has the characteristics of a judgment in rem."

Beginning at the bottom of page 93, supra, the following appears:

"The recital of jurisdictional facts in the order appointing a receiver is prima facie evidence of the existence of such facts. In other words, an order appointing a receiver is, in effect, a finding that all the facts necessary to authorize the appointment were established."

The Oklahoma court made adequate findings of fact and, after a full hearing, concluded that the minority stockholder was entitled to the appointment of a receiver and accordingly McCullough was appointed.

It will be remembered that Horse Auctions, Inc., is a corporation organized and existing under the laws of the State of Texas and is qualified to do business in the State of Oklahoma, where it was engaged in business and, of course, was subject to sue and be sued in the State of Oklahoma. The effect in Arkansas of the judgment of the Oklahoma court appointing a receiver for a corporation doing business in Oklahoma is stated in Section 112, page 95, supra, as follows:

"The decree in the court of the domicil of the corporation is evidence in every other state that a proper case exists in that state for the appointment of a receiver, and it is to be respected accordingly, in obedience to the constitutional provision whereby full faith and credit is to be given in each state to the records and judicial proceedings of every other state of the Union. The fact that a receiver is appointed by a consent decree does not render his authority subject to collateral attack in another jurisdiction."

■ An order or decree appointing a receiver may be vacated in a proper proceeding, and the defendant should be afforded a speedy hearing on the motion to vacate the order for the appointment of a receiver. If the movants are, in fact, majority stockholders and if the facts recited in the judgment of the Oklahoma court appointing a receiver are not true, they, the movants in the instant case, undoubtedly had the right to intervene and to set forth the facts upon which they rely to obtain a vacation of the appointment. Evidently such procedure would have been followed if the statement of facts made by the Oklahoma court were not true. Certainly the judgment of the Oklahoma court appointing the Receiver is not void and is not subject to a collateral attack such as is being urged by the movants here.

In 45 Am.Jur. Receivers, Sec. 116, beginning at page 98, the rule is stated as follows:

"When the court appointing a receiver has jurisdiction of the subject matter and of the parties, its order appointing the receiver, no matter how erroneous, cannot be collaterally attacked, * * *."

■ The judgment of the Oklahoma court entered December 27, 1962, appointing a Receiver for Horse Auctions, Inc., and the judgment of said court of December 31, 1962, approving the stipulation of settlement and authorizing the Receiver to compromise the instant suit are entitled to full faith and credit, and the order of this court substituting A. D. McCullough, Receiver for Horse Auctions, Inc., as plaintiff, and the order of this court granting the motion of the Receiver and the defendants to dismiss the case with prejudice are not subject to attack by the movants for the reasons hereinbefore set forth.

Therefore, an order is being entered today denying the motion of John H. Liles and Van K. Davis filed herein on March 13, 1963, to set aside and vacate the orders of this court of January 3, 1963.